OPINION OF THE COURT
Per Curiam.
Order, dated May 27, 2010, reversed, with $10 costs, motion denied, and the stipulation of settlement, final judgment and warrant of eviction are reinstated.
Tenants leased the subject apartment from landlord’s predecessor in interest for a two-year term beginning in February 2004 pursuant to a written lease agreement. Landlord’s predecessor in interest charged a market rent ($5,000 per month) pursuant to an October 2002 determination by the Division of Housing and Community Renewal (DHCR) on a prior tenant’s fair market rent challenge. DHCR concluded that the unit was exempt from all rent regulations because the legal regulated rent exceeded $2,000.* That DHCR determination was neither reviewed on administrative appeal nor challenged in a CPLR article 78 proceeding. Approximately five months after the lease term commenced, the prior landlord’s entitlement to J-51 benefits for the building in which the apartment is situated expired. The lease was subsequently renewed for a period ending on January 31, 2008; upon the expiration of the renewal lease, tenants apparently remained in occupancy as month-to-month tenants. In February 2009, landlord, which became the owner of the building in July 2008, served upon tenants a notice of termination terminating the month-to-month tenancy.
While the parties were engaged in negotiations to resolve the landlord-tenant dispute, the Appellate Division, First Department, on March 5, 2009, decided Roberts v Tishman Speyer *77 Props., L.P. (62 AD3d 71 [2009]), in which the Court held, among other things, that all apartments in a building receiving J-51 tax benefits are subject to the Rent Stabilization Law during the entire period in which the owner receives such benefits and that a landlord who receives J-51 benefits forfeits its rights under the luxury decontrol provisions even if the building was already subject to the Rent Stabilization Law. On April 7, 2009, the Appellate Division granted Tishman Speyer’s motion for leave to appeal to the Court of Appeals.
On August 19, 2009, landlord and tenants entered into a two-attorney stipulation of settlement. The stipulation provided, among other things, that (1) tenants consented to entry of a final judgment of possession in favor of landlord, (2) a warrant of eviction was to be issued forthwith, with execution stayed through December 31, 2009, (3) tenants were to pay use and occupancy in the amount of $5,200 per month (the rental amount pursuant to the renewal lease), and (4) tenants had “reviewed th[e] stipulation with Meryl Wenig, Esq. and have knowingly and voluntarily entered into th[e] [stipulation].” Landlord formally commenced this holdover summary proceeding on or about August 26, 2009, and Civil Court so-ordered the stipulation on September 10, 2009. The Court of Appeals subsequently affirmed the First Department’s order in Roberts (13 NY3d 270 [2009]).
Shortly before they were required to vacate the apartment, tenants moved to vacate the stipulation, arguing that, as a result of Roberts, (1) the apartment was rent stabilized since tenants entered into occupancy at the time landlord’s predecessor in interest was receiving J-51 benefits (and tenants’ lease did not contain the required notice informing tenants that the apartment would be subject to deregulation upon expiration of the benefits period), and (2) the stipulation violated public policy because it did not reflect that the apartment was stabilized and the stipulation had the effect of waiving certain rent stabilization rights. Civil Court granted the motion, vacated the stipulation, final judgment and warrant of eviction and dismissed the holdover petition. We reverse.
It is well established that “[stipulations of settlement are favored by the courts and not lightly cast aside” (Hallock v State of New York, 64 NY2d 224, 230 [1984]). Thus, a party seeking to vacate a stipulation must demonstrate cause sufficient to invalidate a contract — fraud, collusion, mistake, accident or that the agreement offends public policy (id.-, see *78 Mitchell v New York Hosp., 61 NY2d 208 [1984]). In evaluating whether a party has established cause sufficient to vacate a stipulation, we are mindful that strict enforcement of such agreements promotes efficient dispute resolution, effective court calendar management and respect for the litigation process (see Hallock, 64 NY2d at 230).
Here, tenants failed to demonstrate any basis upon which to disturb the stipulation. Tenants, represented by experienced landlord-tenant counsel, entered the two-attorney, so-ordered stipulation after lengthy negotiations. The stipulation, which did not provide that tenants were waiving any protections of the Rent Stabilization Law or Code, was mutually beneficial to the parties — landlord was afforded a final judgment and a date-certain by which it would recover possession, while tenants were permitted to remain in occupancy of the apartment (at a rate of use and occupancy identical to the rent they had been paying for the unit) for several additional months.
Moreover, tenants submitted no evidence demonstrating fraud by landlord, or that they entered into the stipulation due to mistake or by accident. In this connection, we note that landlord lawfully relied upon the undisturbed 2002 DHCR determination in concluding that the apartment was exempt from all rent regulations, and asserted consistently throughout the dispute that the apartment was not rent stabilized. Moreover, the highly-publicized Roberts litigation was extant during the negotiation process. We reject tenants’ argument that the stipulation violated public policy, since, in light of the undisturbed 2002 DHCR determination and the myriad issues raised by the Roberts litigation (see generally Roberts, 13 NY3d at 287), the regulatory status of the apartment was debatable (see generally Matter of Matinzi v Joy, 60 NY2d 835 [1983]; Kent v Bedford Apts. Co., 237 AD2d 140 [1997]; Citi Dev. & Mgt., Inc. v Tirado, 15 Misc 3d 138[A], 2007 NY Slip Op 50938[U] [2007]).
Hunter, Jr., J.E, McKeon and Shulman, JJ., concur.

 Beginning in 1995, the apartment was registered annually with DHCR as exempt from rent stabilization due to this “high rent vacancy.”